# UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| ORGANIZED VILLAGE OF KAKE, *et al.*, ) ) ) | |
| Plaintiffs, ) ) | 1:09-cv-00023 JWS |
| vs. ) ) | ORDER AND OPINION |
| ) ) | [Re: Motions at Dockets 42 and 54] |
| UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*, ) ) ) | |
| Defendants, ) ) | |
| and ) ) | |
| STATE OF ALASKA and ALASKA FOREST ASSOCIATION, ) ) ) | |
| Intervenor-Defendants. ) | |

## I.  MOTIONS PRESENTED

At docket 42, plaintiffs Organized Village of Kake, *et al.,* move for summary judgment setting aside the Tongass Exemption, reinstating the Roadless Rule, and vacating approved timber sales in conflict with the Roadless Rule.  At dockets 53 and 56, intervenor-defendants State of Alaska and Alaska Forest Association oppose the motion, respectively.  At docket 54, the United States Department of Agriculture ("USDA") and United States Forest Service ("Forest Service") (jointly "federal defendants or "the Forest Service") oppose the motion and cross-move for summary

judgment dismissing plaintiffs' claims.  Plaintiffs reply at docket 66.  Oral argument was not requested, and it would not assist the court.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

This action challenges a Forest Service rule[1] exempting the Tongass National Forest ("the Tongass") from the Roadless Area Conservation Rule[2] ("the Roadless Rule"). The National Forest System consists of approximately 192 million acres of national forests, national grasslands, and related areas.  The Tongass in southeast Alaska includes 16.8 million acres and is the largest national forest.  The Forest Service manages the National Forest System under several federal statutes, including the National Forest Management Act ("NFMA"),[3] which requires the Forest Service to develop and periodically revise a land and resource management plan, commonly known as a "forest plan," for each unit of the National Forest System.  Each forest plan must "provide for multiple use and sustained yield of the products and services obtained" from the forest unit pursuant to the Multiple Use Sustained Yield Act of 1960,[4] and coordinate "outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness."[5]

In the 1970s, the Forest Service developed an inventory of roadless areas generally larger than five thousand acres in national forests.  From the 1970s through the late 1990s, inventoried roadless areas were governed primarily by individual forest plans developed under the NFMA.  In the late 1990s, the Forest Service began reevaluating its approach to roadless area management.  On October 13, 1999, President Clinton directed the Forest Service to initiate a nationwide plan to protect the approximately 58.5 million acres of inventoried roadless areas in national forests.

---

[1] 36 C.F.R. § 294.14(d) (2004).

[2] 36 C.F.R. §§ 294.10 -.14 (2001).

[3] 16 U.S.C. §§ 1600-1614.

[4] 16 U.S.C. §§ 528-531.

[5] 16 U.S.C. § 1604(e)(1).

Case 1:09-cv-00023-JWS   Document 68   Filed 03/04/11   Page 2 of 27

In the notice of intent to prepare an EIS, the Forest Service proposed promulgation of a rule that would initiate a two-part process to protect roadless areas. Part one would immediately restrict certain activities, such as road construction in unroaded portions of inventoried roadless areas, and part two "would establish national direction for managing inventoried roadless areas, and for determining whether and to what extent similar protections should be extended to uninventoried roadless areas."[6] The notice also solicited comments on whether or not the proposed rule should apply to the Tongass and, if so, whether inventoried Tongass roadless areas should be covered under part one of the rule or only under part two.[7]

The accompanying notice of proposed rulemaking stated that the Forest Service "is proposing to delay consideration of protecting inventoried roadless areas for the [Tongass] until April 2004, in light of recent Forest Plan decisions that conserve roadless areas and a Southeast Alaska economy that is in transition."[8] The notice stated that 1999 revisions to the Tongass Land and Resource Management Plan ("TLMP") protected additional lands from road construction, the timber economy in Southeast Alaska is transitioning to a competitive bid process, and "about two-thirds of the total timber harvest planned on the [Tongass] over the next 5 years is projected to come from inventoried roadless areas."[9] The notice acknowledged that use of inventoried roadless areas has helped the Forest Service meet market demand for timber in the Tongass, but that

> ... with the continuing transition of the southeast Alaska timber market to an independent bid market, coupled with the long-term projected decline in timber demand for southeast Alaska timber, it is also possible that, by 2004 (when a review of the revised Tongass Land Management Plan is required), the long term

---

[6]Doc. 42-7 at p. 2.

[7]*Id.*

[8]Doc. 42-8 at p. 5.

[9]*Id.* at p. 6.

Case 1:09-cv-00023-JWS   Document 68   Filed 03/04/11   Page 3 of 27

demand for timber may be substantially reduced and market demand could be met consistent with protecting existing inventoried roadless areas."[10]

In May 2000, the Forest Service published a Draft Environmental Impact Statement ("EIS") for the Roadless Rule. The May 2000 DEIS "proposed not to apply prohibitions on the Tongass, but to determine whether road construction should be prohibited in unroaded portions of inventoried roadless areas as part of the 5-year review of the Tongass Forest Plan."[11]

In November 2000, the Forest Service published the Final EIS ("FEIS") for the Roadless Rule.[12] The Roadless Rule FEIS considered two sets of alternatives concerning prohibitions on road construction, reconstruction, and timber harvesting in national forests. The first set included four prohibition alternatives that applied to inventoried roadless areas nationwide. The second set included four alternatives for applying any selected prohibition to the Tongass: 1) the "Tongass Not Exempt" alternative which applied the same prohibition alternative to the Tongass that applied to the rest of National Forest System; 2) the "Tongass Exempt" alternative which did not apply a national prohibition to the Tongass; 3) the "Tongass Deferred" alternative which postponed a decision on whether to apply prohibitions to the Tongass until April 2004; and 4) the "Tongass Selected Areas" alternative which applied prohibitions on inventoried roadless areas located in certain land use designations identified in the TLMP.[13]

On January 12, 2001, the Forest Service published the final rule and record of decision ("ROD") for the Roadless Rule.[14] The ROD stated that the purpose of the Roadless Rule "is to provide lasting protection for inventoried roadless areas within the

---

[10]*Id.*

[11]Doc. 42-9.

[12]Doc. 42-11.

[13]*Id.* at pp. 8-9.

[14]Doc. 42-15.

-4-

National Forest System in the context of multiple-use management,"[15] and that the Roadless Rule was needed because 1) road construction, reconstruction, and timber harvest in inventoried roadless areas "have the greatest likelihood of altering and fragmenting landscapes, resulting in immediate, long-term loss of roadless area values and characteristics"; 2) budget constraints prevent the Forest Service from adequately maintaining the existing road system; and 3) national concern over roadless area management continues to generate costly and time-consuming appeals and litigation.[16] The ROD indicated that a national rule was necessary because the Forest Service has "the responsibility to consider the 'whole picture' regarding the management of the National Forest System, including inventoried roadless areas" and "[l]ocal land management planning efforts may not always recognize the national significance of inventoried roadless areas and the values they represent in an increasingly developed landscape."[17]

As promulgated, the Roadless Rule directed immediate applicability of the nationwide prohibitions on timber harvest, road construction and reconstruction on the Tongass, except for projects that already had a notice of availability of a [DEIS] published in the Federal Register prior to the Roadless Rule's publication in the Federal Register.[18]  The ROD recognized that implementation of the Roadless Rule on the Tongass would cause some adverse economic effects to some forest-dependent communities, but concluded that "the long-term ecological benefits to the nation of conserving these inventoried roadless areas outweigh the potential economic loss to those local communities and that a period of transition for affected communities would still provide certain and long term protection of these lands."[19]

---

[15]*Id.* at p. 2.

[16]*Id.*

[17]*Id.* at p. 4.

[18]*Id.*

[19]Doc. 42-15 at p. 13.

-5-

Since its promulgation, the Roadless Rule has been the subject of numerous lawsuits in federal district courts in Idaho, Utah, North Dakota, Wyoming, Alaska, and the District of Columbia. In May 2001, the U.S. District Court for the District of Idaho issued a preliminary injunction enjoining the Forest Service from implementing the Roadless Rule nationwide.[20] On appeal, the Ninth Circuit reversed the preliminary injunction, concluding that plaintiffs had not shown a substantial likelihood of success on the merits of their claim that the Roadless Rule violated the National Environmental Policy Act ("NEPA"), and that the balance of hardships weighed against enjoining the Roadless Rule.[21] The Ninth Circuit's mandate "issued in April 2003, and the Roadless Rule went into effect nationwide."[22]

In *State of Alaska v. USDA*,[23] the State of Alaska and six other parties filed suit against the USDA, alleging that the Roadless Rule violated the APA, NFMA, NEPA, Alaska National Interest Lands Conservation Act ("ANILCA"), the Tongass Timber Reform Act of 1990 ("TTRA"), and other laws. On June 10, 2003, the parties entered a settlement agreement to resolve and dismiss the litigation. The settlement agreement provided in pertinent part that the federal defendants would publish in the Federal Register within 60 days,

  A. A proposed temporary regulation that would exempt the Tongass National Forest from the application of the Roadless Rule until completion of the rulemaking process for any permanent amendments to the Roadless Rule.

  B. An [advance notice of proposed rulemaking] to exempt both the Tongass and Chugach National Forests from application of the Roadless Rule.[24]

The settlement agreement further provided:

---

[20]*Kootenai Tribe of Idaho v. Veneman*, 2001 WL 1141275 (D.Idaho 2001).

[21]*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002).

[22]*California ex re. Lockyer v. U.S. Dept. of Agriculture*, 575 F.3d 999, 1007 (9th Cir. 2009).

[23]Case No. 3:01-cv-00039 (JKS).

[24]Doc. 42-24 at p. 2

Federal defendants make no representation regarding the content or substance of any final rule, but will move toward final decisions on the proposed temporary regulation exempting the [Tongass] from the application of the Roadless Rule and on permanent amendments to the Roadless Rule, including consideration of exempting both the Chugach National Forest and the Tongass National Forest from the Roadless Rule, in a timely manner.[25]

On July 15, 2003, the Forest Service published an advance notice of proposed rulemaking ("ANPR") in the Federal Register, stating that it was considering a permanent exemption for the Tongass and Chugach National Forests from the applicability of the Roadless Rule.[26] The Forest Service also published a notice of proposed rulemaking,[27] stating its intention to amend regulations to exempt the Tongass from the Roadless Rule's "prohibitions against timber harvest, road construction, and reconstruction in inventoried roadless areas until a final rule is promulgated as announced by the Forest Service" in its July 2003 ANPR.[28] The Forest Service stated that it was publishing the proposed rule and ANPR to fulfill "part of the Department's obligations under the June 10, 2003 settlement agreement for *State of Alaska v. USDA*, while also maintaining the ecological values of inventoried roadless areas in the Tongass and Chugach National Forests."[29] The proposed rule was initially published for a 30-day public comment period, which was extended by 19 days for a total of 49 days.

On October 30, 2003, the Forest Service published a supplemental information report ("SIR") concluding that "no significant new information or changed circumstances exist that require the preparation of a supplemental [EIS] before making the decision to adopt the proposed rule to exempt the [Tongass] from the prohibitions of the roadless rule or select another alternative from the roadless rule's environmental impact

---

[25]*Id.*

[26]Doc. 42-25 at pp. 1-3.

[27]*Id.* at pp. 3-7.

[28]*Id.* at p. 3.

[29]*Id.*

-7-

statement."[30] The SIR specifically considered three new circumstances: 1) the Tongass was being managed under the 1997 Tongass Forest Plan ROD instead of the 1999 ROD, as contemplated by the Roadless Rule FEIS; 2) the continuing decline in timber harvest levels and associated employment since the Roadless Rule FEIS was published; and 3) a proposed land exchange with Sealaska Corporation. After considering the above circumstances, the SIR concluded that "the decision-making picture" was not substantially different than it was at the time the Roadless Rule was adopted in January 2001, and that no additional environmental analysis was required.[31]

In July 2003, the District Court for the District of Wyoming issued a permanent injunction against the Roadless Rule nationwide.[32] The Wyoming district court acknowledged the Ninth Circuit's decision in *Kootenai Tribe*, but declined to follow it.[33]

On December 30, 2003, the Forest Service published a final rule and ROD amending regulations concerning the Roadless Rule to temporarily exempt the Tongass from the Roadless Rule's prohibitions against timber harvest, road construction, and reconstruction in inventoried roadless areas ("the Tongass Exemption"). The Tongass Exemption ROD stated that "[t]his temporary exemption of the Tongass will be in effect until the Department promulgates a subsequent final rule concerning the application of the roadless rule within the State of Alaska, as announced in the agency's second [ANPR] published on July 15, 2003."[34] The ROD further stated that when the Roadless Rule was adopted in January 2001, the Forest Service concluded that ensuring lasting protection of roadless values on the Tongass outweighed the socioeconomic costs to local communities, but the Forest Service "now believe[d] that, considered together, the abundance of roadless values on the Tongass, the protection of roadless values included in the Tongass Forest Plan, and the socioeconomic costs to local communities

---

[30]Doc. 42-27 at p. 3.

[31]*Id.* at p. 19.

[32]*Wyoming v. U.S. Dept. of Agriculture*, 277 F. Supp. 2d 1197 (D.Wyo. 2003).

[33]*Wyoming,* 277 F. Supp. 2d at 1202 n.1.

[34]Doc. 42-28 at p. 1.

-8-

of applying the Roadless Rule's prohibitions to the Tongass, all warrant treating the Tongass differently from the national forests outside of Alaska."[35]  The effective date of the Tongass Exemption was January 29, 2004.

In July 2004, the Forest Service issued a notice of proposed rulemaking, proposing that "a State petitioning process that will allow State-specific consideration of the needs of [roadless] areas [was] an appropriate solution to address the challenges of roadless area management."[36]  In May 2005, the Forest Service published a final rule adopting the "State Petitions Rule," which revised 36 C.F.R. § 294 "to remove the text of the Roadless Rule and insert in its place provisions establishing an eighteen-month window during which states could petition for state-specific roadless area protections."[37]  The final rule stated that under the State Petitions Rule, "management of inventoried roadless areas on the Tongass will continue to be governed by the existing forest plan," thus, the State Petitions Rule negates the need for further Tongass-specific rulemaking as contemplated in the 2003 Tongass Exemption.[38]

In August 2005, several states, including California, Oregon, and New Mexico, filed suit over the State Petitions Rule in District Court for the Northern District of California.  In a September 2006 order, the district court held that the Forest Service violated NEPA and the Endangered Species Act in promulgating the State Petitions Rule, permanently enjoined the State Petitions Rule, and reinstated the Roadless Rule.[39]  The Ninth Circuit affirmed the district court's order permanently enjoining implementation of the State Petitions Rule and further ruled that the district court did not abuse its discretion by reinstating the Roadless Rule as a remedy for the procedural shortcomings.

---

[35]Doc. 42-28 at p. 9.

[36]*Lockyer,* 575 F.3d at 1007-08 (citing 69 Fed. Reg. 42, 636 (July 16, 2004)).

[37]*Id.* at 1008 (citing 70 Fed. Reg. 25,654 (May 13, 2005)).

[38]70 Fed. Reg. 25,659.

[39]*California ex rel. Lockyer v. USDA*, 459 F. Supp. 2d 874 (N.D. Cal. 2006).

-9-

In August 2008, the Wyoming district court again held that the Roadless Rule violated NEPA and the Wilderness Act and permanently enjoined implementation of the Roadless Rule nationwide.[40]  The district court's decision is on appeal before the Tenth Circuit.

In 2008, the Forest Service completed an amendment to the TLMP pursuant to the Ninth Circuit's ruling in *Natural Resources Defense Council v. U.S. Forest Service*,[41] finding that the 1997 FEIS for the TLMP contained deficiencies concerning timber demand estimates.  Since completion of the 2008 TLMP amendment, the Forest Service has authorized timber sales with new road construction in inventoried roadless areas of the Tongass, including the Iyouktug Timber Sale authorized in April 2008, the Kuiu Timber Sale authorized in May 2008, and the Scratchings II Timber Sale authorized in July 2008.

On December 22, 2009, plaintiffs filed a complaint against the Forest Service challenging the Tongass Exemption.  Plaintiffs are "organizations whose members use and rely on the roadless areas of the Tongass for customary and traditional purposes ... recreation, commercial guiding and tourism, scientific research, sport hunting, both sport and commercial fishing, camping, photography, wildlife viewing, and other activities that depend on natural old-growth forest and undisturbed ecological values."[42]

Count I of plaintiffs' complaint alleges that adoption of the Tongass Exemption was "arbitrary, capricious, and not in accordance with law" under the Administrative Procedures Act.[43]  Count II alleges that federal defendants violated the National Environmental Policy Act ("NEPA") by failing to prepare an EIS for the Tongass Exemption and relying on the alternatives presented in the FEIS for the Roadless Rule. Plaintiffs' complaint seeks a declaratory judgment that the Tongass Exemption was "arbitrary, capricious and not in accordance with law, and was adopted without

---

[40]*Wyoming v. U.S. Dept. of Agriculture*, 570 F. Supp. 2d 1309 (D.Wyo. 2008).

[41]421 F.3d 797 (9th Cir. 2005).

[42]Doc. 1 at p. 2.

[43]5 U.S.C. § 706(2)(A).

-10-

observance of procedure required by law."[44]  Plaintiffs' complaint requests the court to vacate the Tongass Exemption and all Forest Service decisions inconsistent with the Roadless Rule as adopted in 2001, and to enter "appropriate injunctive relief."[45]

On May 28, 2009, the USDA issued an interim directive reserving to the Secretary of Agriculture "the authority to approve or disapprove road construction or reconstruction and the cutting, sale, or removal of timber in those areas identified in the set of inventoried roadless area maps contained in Forest Service Roadless Area Conservation, Final Environmental Impact Statement, Volume 2, dated November 2000,"[46] which includes the Tongass.  On May 28, 2010, the Secretary signed a memorandum renewing the interim directive for an additional year.[47]

### III.  STANDARD OF REVIEW

This action arises under the Administrative Procedures Act ("APA"), which provides for judicial review of final agency action.[48]  Under the APA, the court "will reverse the agency action only if the action is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law."[49]  Under this standard of review, an agency must "examine the relevant data and articulate a satisfactory explanation for its action."[50]  "An agency's action is arbitrary and capricious if the agency fails to consider an important aspect of a problem, if the agency offers an explanation for the decision that is contrary to the evidence, if the agency's decision is so implausible that it could not be ascribed to a difference in view or be the product of agency expertise, or if the

---

[44]Doc. 1 at p. 17.

[45]*Id.*

[46]Secretary's Memorandum 1042-154 (May 28, 2009).

[47]Secretary's Memorandum 1042-155 (May 28, 2010).

[48]5 U.S.C. §§ 701-706.

[49]*Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2005) (citing 5 U.S.C. § 706(2)).

[50]*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29, 43 (1983).

-11-

agency's decision is contrary to the governing law."[51] "The determination whether the [agency] acted in an arbitrary and capricious manner rests on whether it 'articulated a rational connection between the facts found and the choice made.'"[52] The scope of review is narrow, and the court may not substitute its judgment for that of the agency.[53] Although the court presumes regulations to be valid, the court's "inquiry into their validity is a 'thorough, probing, in-depth review.'"[54]

## IV. DISCUSSION

### A. Justiciability and Ripeness

As a preliminary matter, the Forest Service argues that plaintiffs' claims are neither justiciable nor ripe for adjudication. The Forest Service does not dispute that the plaintiffs have standing to raise their claims under 5 U.S.C. § 702. The Forest Service first argues that plaintiffs' challenge to the Tongass Exemption is not justiciable because "direct judicial review of agency regulations is unavailable."[55] "To obtain judicial review under the APA, [plaintiffs] must challenge a final agency action."[56] "For an agency action to be final, the action must (1) 'mark the consummation of the agency's decisionmaking process,' and (2) 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'"[57] Here, the Forest Service's designation of the Tongass Exemption as a "final rule" satisfies the requirement for final

---

[51] *Id.* (internal citation omitted).

[52] *Friends of Yosemite Valley v. Norton*, 348 F.3d 789, 793 (9th Cir. 2003) (quoting *Pub. Citizen v. Dept. of Transportation*, 316 F.3d 1002, 1020 (9th Cir. 2003)).

[53] *Hells Canyon Alliance v. U.S. Forest Serv.*, 227 F.3d 1170, 1177 (9th Cir. 2000).

[54] *National Ass'n of Home Builders v. Norton*, 340 F.3d 835, 841 (9th Cir. 2003) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971)).

[55] Doc. 54 at p. 12

[56] *Oregon Natural Desert Assoc. v. U.S. Forest Service*, 465 F.3d 977, 982 (9th Cir. 2006) ( citing 5 U.S.C. § 704).

[57] *Oregon Natural Desert,* 465 F.3d at 982 (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)).

-12-

agency action under § 704.[58]  Although the Tongass Exemption was intended to be "temporary," it was published as a final rule.  Moreover, it was a rule that was to be in effect indefinitely, and has, in fact, been in effect for more than seven years.  The second condition is met because the Tongass Exemption amended the existing Roadless Rule, thereby effecting immediate change in existing law or policy.[59]

The Forest Service next argues that plaintiffs' claims against the Tongass Exemption are not justiciable "in the absence of challenge to a site-specific application of the Rule."[60]  The Ninth Circuit rejected a similar argument in *Idaho Conservation League v. Mumma*,[61] stating,

> [I]f the agency action only could be challenged at the site-specific development stage, the underlying programmatic authorization would forever escape review. To the extent that plan pre-determines the future, it represents a concrete injury that plaintiffs must, at some point, have standing to challenge.  That point is now, or it is never.[62]

The Forest Service also argues that plaintiffs' claims are not ripe for review because two timber sales specifically named in plaintiffs' complaint, Iyouktug and Scratchings II, "are not planned for implementation before the end of fiscal year 2012," and the Kuiu sale "no longer proposes timber harvest in [inventoried roadless areas]."[63] Federal defendants' argument is unavailing because plaintiffs are challenging the Tongass Exemption as a whole, in addition to three particular timber sales authorized under the exemption.  Ripeness, which is a question of law,[64] prevents courts "from entangling themselves in abstract disagreements over administrative policies, and also

---

[58]*Citizens for Better Forestry v. U.S. Dept. of Agriculture*, 341 F.3d 961, 976 (9th Cir. 2003).

[59]*Gunderson v. Hood*, 268 F.3d 1149, 1154 (9th Cir. 2001).

[60]Doc. 54 at p. 15.

[61]956 F.2d 1508 (9th Cir. 1992).

[62]*Idaho Conservation League v. Mumma*, 956 F.2d 1508,1516 (9th Cir. 1992).

[63]Doc. 54 at p. 15.

[64]*Lockyer*, 575 F.3d 999, 1010 (9th Cir. 2009).

-13-

[] protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'"[65]  In determining whether an agency's decision is ripe for judicial review, the court considers the "fitness of the issues for judicial decision," and "the hardship to the parties of withholding court consideration."[66] To do so, the court must consider (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with administrative action; and (3) whether further factual development of the issues presented is necessary.[67]

Here, because the Tongass Exemption has already removed the additional protections afforded under the Roadless Rule, delayed review would cause hardship to the plaintiffs.  In addition, "[j]udicial consideration of this dispute would not interfere with further administrative action with respect to the [Tongass Exemption], which is a final rule that has been published in the Federal Register."[68]  Nor is additional factual development required for a judicial determination of the issues presented in this action, which concern whether the Forest Service violated the APA and NEPA in promulgating the Tongass Exemption.

Moreover, the fact that the Roadless Rule is the subject of ongoing litigation does not make the Tongass Exemption any more or any less ripe for judicial review.  Similarly, federal defendants' contention that the Forest Service is transitioning towards a Tongass forest industry that relies on young growth timber instead of old growth timber does not make plaintiffs' claims that the Forest Service violated the APA and NEPA unripe for judicial review.  For the above reasons, the court concludes that this dispute is ripe for adjudication.

---

[65]*Id.* at 1010-11 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

[66]*Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998) (quoting *Abbott Labs.*, 387 U.S. at 149)).

[67]*Ohio Forestry*, 523 U.S. at 733.

[68]*Lockyer*, 575 F.3d at 1011.

-14-

Having concluded that plaintiffs' challenge to the Tongass Exemption is justiciable and ripe for adjudication, the court turns to the merits of plaintiffs' claims. In their motion for summary judgment, plaintiffs request the court to vacate the Tongass Exemption, reinstate the Roadless Rule on the Tongass, and vacate the Scratchings Timber Sale ROD II, and portions of the Iyouktug Timber Sales ROD and Kuiu Timber Sale Area ROD that authorize cutting trees or road construction in inventoried roadless areas. Federal defendants oppose the motion on the grounds that the Tongass Exemption does not violate the APA and complies with NEPA.

## B.     APA Claim

Plaintiffs argue that the rationale for the Tongass Exemption, as set forth in the final rule and ROD, was arbitrary and capricious because defendants "relied on assertions that were unsupported or contradicted by the facts in the record, reversed previous factual findings without explanation, ignored important aspects of the problems, and failed to consider obvious alternative courses of action."[69] Plaintiffs' primary arguments are that the Roadless Rule does not prevent construction of utility lines or roads to connect southeast Alaska communities, no job loss was attributable to the Roadless Rule, and the Tongass Exemption does not reduce legal uncertainty. Federal defendants contend that the Forest Service reasonably considered existing protections of roadless values on the Tongass, impacts of the Roadless Rule on road and utility connections in southeast Alaska, economic impacts of the Roadless Rule, and the impacts of ongoing litigation against the Roadless Rule.

"[The court's] review of an agency decision is based on the administrative record and the basis for the agency's decision must come from the record.[70] As contemplated in both the July 2003 settlement agreement and promulgated in Federal Register, the Tongass Exemption was intended as a temporary rule which would be in effect until "the Department promulgates a subsequent final rule concerning the application of the roadless rule within the State of Alaska, as announced in the agency's second [ANPR]

---

[69]Doc. 42 at p. 8.

[70]*Home Builders*, 340 F.3d at 841.

published on July 15, 2003."[71]  The settlement agreement further contemplated that federal defendants would move toward "permanent amendments to the Roadless Rule, including consideration of exempting both the Chugach National Forest and Tongass National Forest from the Roadless Rule, in a timely manner."[72]

In the Tongass Exemption ROD, the Forest Service offered the following grounds for promulgating the Tongass Exemption: 1) the previously disclosed socioeconomic costs to local communities of applying the Roadless Rule's prohibitions to the Tongass; 2) the "protection of roadless values included in the Tongass Forest Plan," and 3) the legal uncertainty caused by litigation over the Roadless Rule during the prior two years. The court must determine whether any of these proffered grounds provided a rational basis for temporarily exempting the Tongass from the Roadless Rule's prohibitions.

### 1.    Socioeconomic Costs

In support of temporarily exempting the Tongass from the Roadless Rule's prohibitions against timber harvest, road construction, and reconstruction in inventoried roadless areas, the Tongass Exemption ROD stated that application of the Roadless Rule to the Tongass: 1) could result in the loss of approximately 900 jobs in southeast Alaska, and 2) significantly limit the ability of Southeast Alaska communities to develop road and utility connections.

As to potential job losses, the Tongass Exemption ROD specifically stated,

The November 2000 FEIS for the roadless rule estimated that a total of approximately 900 jobs could be lost in the long run in Southeast Alaska due to the application of the roadless rule, including direct job losses in the timber industry as well as job losses in other sectors.[73]

The ROD's reasoning suggests that temporarily exempting the Tongass from the Roadless Rule's prohibitions is necessary in the short run because 900 jobs could be lost in the long run if the Roadless Rule's prohibitions are applied to the Tongass.  The ROD did not discuss or provide any evidence of how many jobs could be lost during the

---

[71]Doc. 42-28 at p. 1.

[72]Doc. 42-24 at p. 2.

[73]Doc. 42-28 at p. 2.

-16-

intended temporary duration of the exemption, nor did it identify any other potential negative economic effects.  The agency's use of long-term potential job losses to justify a short-term temporary rule is implausible, particularly in light of the fact that the Forest Service agreed in the 2003 settlement agreement to move towards further rulemaking addressing the Tongass in a "timely manner."  Because the Forest Service did not articulate a rationale connection between long-term job losses and its decision temporarily exempting the Tongass from the Roadless Rule's prohibitions, this rationale for its decision was arbitrary and capricious.

Moreover, the proffered rationale runs counter to the evidence before the agency.  As promulgated, the Roadless Rule included a mitigation measure to assure long-term protection of the Tongass's ecological values and a "smooth transition for forest dependent communities."[74]  The final rule provided that the Roadless Rule's prohibitions would not apply to "road construction, reconstruction, and the cutting, sale or removal of timber from inventoried roadless areas on the [Tongass] where a notice of availability for a [DEIS] for such activities [had] been published in the Federal Register" prior to the Roadless Rule's publication.[75]  The Roadless Rule ROD indicated that the Tongass had 261 million board feet ("MMBF") of timber under contract in inventoried roadless areas, 386 MMBF under a notice of availability for a DEIS, FEIS, or ROD, and 204 MMBF available in roaded areas that was sold, had a ROD or was in the planning process, for a total of 851 MMBF.  The ROD further stated that 851 MMBF was "enough timber to satisfy about 7 years of estimated market demand,"[76] based on a market demand of approximately 122 MMBF.  The Roadless Rule ROD also indicated that during this period of transition, "an estimated 114 direct timber jobs and 182 total jobs would be affected"[77] in southeast Alaska.  Consequently, the Forest Service's explanation that temporarily exempting the Tongass from the Roadless Rule was

---

[74]Doc. 42-15 at p. 12.

[75]*Id.*

[76]*Id.* at p. 13.

[77]*Id.*

Case 1:09-cv-00023-JWS   Document 68   Filed 03/04/11   Page 17 of 27

necessary to prevent significant job losses is not supported by the evidence, at least in the first seven years after adoption of the Roadless Rule.

Furthermore, neither the SIR nor the Tongass Exemption ROD offer any evidence showing actual job loss due to application of the Roadless Rule and any resulting lower timber harvest levels on the Tongass. To the contrary, the evidence offered suggested that job losses were attributable to the decline in market demand rather than the prohibitions in the Roadless Rule. The SIR stated that the amount of timber actually harvested in the Tongass "is limited more by market demand than [maximum allowable level of harvest.]"[78] The SIR also indicated that from 1990 to 1999 southeast Alaska timber harvests declined by 60%, and from 1999 to 2002, fell an additional 46%. The SIR further stated that while the Roadless Rule FEIS harvest levels were based on a market demand estimate of 124 MMBF per year, only 34 MMBF was harvested in 2002 and 51 MMBF in 2003, and that while the Forest Service offered 71 MMBF for sale in 2003, only 25 MMBF was purchased.[79] Similarly, the Roadless Rule FEIS stated that "increased competition in the timber industry has eroded Alaska's market share and competitive position in the global timber market, and that "[i]f this trend continues, market demand may continue to decline. Thus, five years from now the effect of the prohibitions might have a very different effect on the local economy than what is projected today."[80] Because the Forest Service's proffer that temporarily exempting the Tongass from the Roadless Rule was necessary to prevent significant job losses runs counter to the evidence, it is arbitrary and capricious.

Another justification offered for the Tongass Exemption was that the Roadless Rule "significantly limits the ability of communities to develop road and utility connections."[81] The Tongass Exemption ROD did not provide any evidence in support of its bald assertion that the Roadless Rule significantly limits the ability of communities

---

[78]Doc. 42-27 at p. 16.

[79]*Id.* at pp. 24-25.

[80]Doc. 42-12 at p. 66.

[81]Doc. 42-28 at p. 2.

-18-

in Southeast Alaska to develop road and utility connections, and that a temporary exemption would address such losses.  Moreover, the evidence in the remainder of the record is contrary to the proffered justification.

The Roadless Rule specifically allows construction of Federal Aid Highways if the Secretary of Agriculture determines that the project is in the public interest and "no other reasonable or prudent alternative exists."[82]  In the Roadless Rule FEIS, the Forest Service concluded "[i]t appears that in the reasonably foreseeable future, construction of State highways through inventoried roadless areas in Alaska may not be an issue" because none of the proposed transportation corridors identified in the existing TLMP "have received serious local or State support, and none are on any approved project lists."[83]

In the Tongass Exemption ROD, the Forest Service acknowledged that the Roadless Rule permits construction of Federal Aid Highways, but contended that it is not always possible to obtain a finding that a project is in the public interest and no other reasonable and prudent alternative exists.  The agency's argument is not persuasive because the Roadless Rule maintained the Secretary's discretion as it already existed.[84]

In addition, the SIR for the Tongass Exemption indicated that both the 1997 and 1999 TLMP RODs addressed long-term transportation needs of southeast Alaska by including the use of the Transportation and Utilities System Land Use Designation ("LUD") and that roads recognized under the LUD, if they are in the best public interest and are authorized by the USDA, could go forward.[85]  The SIR further concluded that "no new information has come to light that would alter the expectations of major roads or transportation corridors or associated economic impacts estimate[d] in the Roadless FEIS and supported by the Forest Plan FEIS of 1997 or the 2003 SEIS."[86]

---

[82]Doc. 42-15 at p. 30.

[83]Doc. 42-12 at p. 66.

[84]*Id.* at p. 9.

[85]Doc. 42-27 at p. 39.

[86]Doc. 52, exh. 5 at p. 41

-19-

In support of the argument that Tongass Exemption was necessary because the Roadless Rule significantly limits the ability of communities to develop road connections, the Tongass Exemption ROD stated,

> The history of road development in Southeast Alaska since statehood is that most State highway additions have been upgraded from roads built to harvest timber .... By precluding the construction of roads for timber harvest, the roadless rule reduces future options for similar upgrades, which may be critical to economic survival of many of the smaller communities in Southeast Alaska.[87]

The Forest Service's argument, which is not supported by any evidence, is speculative at best. Moreover, it was not considered in the 2001 FEIS, nor addressed in the SIR. Rather, it appears to be a post-hoc rationalization which the court may not consider in conducting review under the APA.[88]

Similarly, the Forest Service's assertion that a temporary exemption was necessary to allow construction of utility lines was also arbitrary because it is unsupported by any evidence. The Roadless Rule FEIS concluded that impacts to utility corridors in the Western States would be minimal, but did not identify any impacts to potential utility corridors in southeast communities.[89] In addition, the Tongass Exemption ROD acknowledged that the TTRA designated 12 permanent LUD II areas, which can be used to "provide vital Forest transportation and utility system linkages, if necessary."[90] Furthermore, the Roadless Rule allows timber cutting, sale, or removal in inventoried roadless areas when incidental to authorized activities such as utility corridors.[91] Because the agency's explanation that the Roadless Rule significantly limits utility connections is not supported by and is contrary to the evidence, it is arbitrary and capricious.

---

[87]Doc. 42-28 at p. 8.

[88]*Crickon v. Thomas*, 579 F.3d 978, 987 (9th Cir. 2009).

[89]Doc. 42-12 at p. 45.

[90]Doc. 42-28 at p. 7.

[91]Doc. 42-15 at p. 16.

-20-

## 2. Protection of Roadless Values in Tongass Forest Plan

The third rationale offered in support of the Tongass Exemption in the 2003 ROD is that the Forest Service "determined that, at least in the short term, the roadless values on the Tongass are sufficiently protected under the Tongass Forest Plan and that the additional restrictions associated with the roadless rule are not required."[92] The Tongass Exemption ROD further stated that under the 1997 Tongass Forest Plan, commercial timber harvest is prohibited on more than 78 percent of the Tongass.[93]

In the 2001 Roadless Rule ROD, however, the Forest Service reviewed the same facts in the 2001 FEIS and concluded that immediately prohibiting new road construction and timber harvest in all inventoried roadless areas in the Tongass would most effectively protect its roadless values,[94] and that "[a]llowing road construction and reconstruction on the [Tongass] to continue unabated would risk the loss of important roadless area values"[95] The Roadless Rule ROD further stated that delaying implementation of the Roadless Rule on the Tongass even until April 2004 "would not have assured long-term protection of the Forest's unique ecological values and characteristics."[96]

The 2001 FEIS stated that a substantial amount of timber harvest and roading was projected to occur in inventoried roadless areas of the Tongass in the next five years:

> Under the current TLMP, the total projected timber offer in inventoried roadless areas on the Tongass in the next 5 years (fiscal years 2000 to 2004) is 539 MMBF, requiring 291 miles of road construction and reconstruction, including 77 miles of temporary roads. This represents nearly half the timber volume

---

[92]Doc. 42-28 at p. 3.

[93]*Id.* at p. 1.

[94]Doc. 42-15 at p. 12.

[95]*Id.*

[96]*Id.*

projected to be offered from inventoried roadless areas nationwide for this 5-year period.[97]

The 2001 FEIS further acknowledged "the heightened sensitivity of the Tongass to further fragmentation" due to the marked decline in the amount of productive old growth in areas of the Tongass that have been intensively managed for timber production. The FEIS also stated, "Based on the extensive amount of roading and harvest currently projected under the current TLMP and the intensive even-aged techniques that are used to harvest timber on the Tongass, forest fragmentation may increase in the areas where harvest is scheduled," including "many areas that are adjacent to existing heavily fragmented areas."[98] Despite the above findings in the 2001 FEIS and the finding of no changed circumstances in the SRI, two years later the Forest Service concluded that "in the short term, the roadless values on the Tongass are sufficiently protected under the Tongass Forest Plan."[99]

In reversing course and adopting the Tongass Exemption, the Forest Service provided no reasoned explanation as to why the Tongass Forest Plan protections it found deficient in its 2001 FEIS and ROD, were deemed sufficient in its 2003 ROD. "[T]he requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position."[100] When an agency's "new policy rests upon factual findings that contradict those which underlay its prior policy ... a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy."[101] The USDA's failure to provide a reasoned explanation for its reversal of position on the adequacy of the Tongass Forest Plan's protections of roadless values was arbitrary and capricious.

---

[97] *Id.* at p. 59.

[98] Doc. 42-12 at p. 58.

[99] Doc. 42-28 at p. 3.

[100] *F.C.C. v. Fox Television Stations, Inc.*, 129 S.Ct. 1800, 1811 (2009).

[101] *Fox Television*, 129 S.Ct. at 1811.

-22-

Furthermore, the Forest Service's conclusion that roadless areas in the Tongass were sufficiently protected under the Tongass Forest Plan and that the additional restrictions provided in the Roadless Rule were not required is also contrary to Ninth Circuit precedent. In the Ninth Circuit's two decisions addressing the Roadless Rule, the court found that "the Roadless Rule provide[s] greater substantive protections to roadless areas than the individual forest plans it superseded."[102]

### 3. Legal Uncertainty

The final rationale offered in support of the Tongass Exemption is that adoption of the Tongass Exemption would provide legal certainty. The Tongass Exemption ROD stated in pertinent part, "Given the great uncertainty about the implementation of the roadless rule due to the various lawsuits, the Department has decided to adopt this final rule, initiated pursuant to the settlement agreement with the State of Alaska, to temporarily exempt the [Tongass] from the prohibitions of the roadless rule."[103] The ROD further stated "[t]his final rule addresses the important question of whether the rule should apply on the Tongass in the short term if the roadless rule were to be reinstated by court order."[104] In light of the fact that the Tongass Exemption was promulgated as a temporary exemption and the Forest Service agreed to engage in further rulemaking addressing the Tongass and Chugach in a "timely manner," the USDA's rationale that adoption of the temporary Tongass exemption would provide legal certainty is implausible.[105]

### 4. Intervenor-Defendants' Arguments

In its brief, intervenor-defendant State of Alaska suggests that the actual stated purpose for the Tongass Exemption was to "implement[] the national interests proclaimed by Congress for the Tongass National Forest" in the TTRA.[106] Intervenor-

---

[102]*Lockyer*, 575 F.3d at 1014 (citing *Kootenai Tribe*, 313 F.3d at 1110.

[103]Doc. 42-28 at p. 3.

[104]*Id.*

[105]*Id.*

[106]Doc. 53 at p. 4 (citing Doc. 42-25 at p. 5).

defendant Alaska Forest Service Association similarly argues that "a fundamental reason for the Forest Service's decision to promulgate the Tongass Exemption was the agency's legitimate concern that the 2001 Roadless Rule violated ANILCA and the TTRA."[107]  Neither rationale is identified in the Tongass Exemption ROD or the notice of proposed rulemaking as a reason for temporarily exempting the Tongass from the Roadless Rule.

Moreover, the Roadless Rule ROD concluded that immediately applying the Rule to the Tongass was consistent with the TTRA, stating that "[w]hile the TTRA urges the Forest Service to 'seek to meet market demand' for timber from the [Tongass], the TTRA does not envision an inflexible harvest level, but a balancing of the market, the law, and other uses, including preservation."[108]  On the other hand, the Tongass Exemption ROD stated that the USDA "believes that exempting the Tongass from the prohibitions in the roadless rule is consistent with congressional direction and intent in the ANILCA and the TTRA legislation."[109]  Even assuming ensuring compliance with TTRA and ANILCA was a reason for promulgating the Tongass Exemption, the USDA failed to provide a reasoned explanation for changing its position that applying the Roadless Rule to the Tongass was consistent with the TTRA.  The Forest Service's failure to provide a reasoned explanation for its reversal of position was arbitrary and capricious.

Intervenor-defendant State of Alaska also argues that the Forest Service promulgated the Tongass Exemption because it was obligated to do so under the July 2003 settlement agreement between the State of Alaska and the USDA.  The State's argument is unavailing.  Pursuant to the plain language of the 2003 settlement agreement, the USDA agreed to publish 1) a "proposed temporary regulation" that would exempt the Tongass from application of the Roadless Rule "until completion of the rulemaking process for any permanent amendments to the Roadless Rule," and

---

[107]Doc. 56 at p. 14.

[108]Doc. 42-15 at p. 13.

[109]Doc. 42-28 at p. 7.

-24-

2) an ANPR to exempt the Tongass and Chugach from application of the Roadless Rule. The settlement agreement explicitly stated that the federal defendants

> make[] no representation regarding the content or substance of any final rule, but will move forward toward final decisions on the proposed temporary regulation exempting the [Tongass] from the application of the Roadless Rule and on permanent amendments to the Roadless Rule, including consideration of exempting both the [Chugach] and the [Tongass] from the Roadless Rule, in a timely manner.[110]

Based on the plain language of the settlement agreement, the USDA was not obligated to promulgate the final rule and ROD adopting the regulation temporarily exempting the Tongass from application of the Roadless Rule.

Because the reasons proffered by the Forest Service in support of the Tongass Exemption were implausible, contrary to the evidence in the record, and contrary to Ninth Circuit precedent, the court concludes that promulgation of the Tongass Exemption was arbitrary and capricious. "With the passage of the Roadless Rule, inventoried roadless areas, 'for better or worse, [were] more committed to pristine wilderness, and less amendable to road development for purposes permitted by the Forest Service.'"[111] While the Forest Service may reevaluate its approach to roadless area management in the Tongass, it must comply with the requirements of the APA in doing so.

## C.   NEPA Claim

Plaintiffs further claim that defendants violated NEPA by failing to prepare an EIS for the Tongass Exemption and relying on the alternatives presented in the FEIS for the Roadless Rule. Because the court concludes that promulgation of the Tongass Exemption was arbitrary and capricious in violation of the APA, the court finds it unnecessary to address plaintiffs' claim that defendants violated NEPA by failing to prepare a SEIS and relying on the alternatives in the 2001 FEIS for the Tongass Exemption.

---

[110]Doc. 42-24 at p. 2.

[111]*Lockyer*, 575 F.3d at 1010 (quoting *Kootenai Tribe*, 313 F.3d at 1106).

**D. Remedy**

Because the Forest Service violated the APA in promulgating the Tongass Exemption, and the violation is not harmless, the court must fashion a remedy. "Ordinarily when a regulation is not promulgated in compliance with the APA, the regulation is invalid."[112] "The effect of invalidating an agency rule is to reinstate the rule previously in force."[113] Because the Tongass Exemption is invalid, the Roadless Rule is reinstated on the Tongass.

Plaintiffs also seek an order vacating the roadless portions of timber sales previously authorized under the Tongass Exemption, specifically the Scratchings Timber Sale ROD II, and the portions of the Iyouktug Timber Sales ROD and Kuiu Timber Sale Area ROD that authorize cutting trees or road construction in inventoried roadless areas. The court declines to rule on plaintiffs' request for vacatur of the three timber sales in light of the interim directive issued by the Secretary of Agriculture reserving all decision making on timber sales to the Secretary. This means that there is no decision as to any of these three particular sales which actually is ripe for review by this court at the present time. Where a court can not provide relief for a party's claim, "that claim is moot and must be dismissed for lack of jurisdiction."[114] Here, the court can not provide relief for plaintiffs' request for vacatur of timber sales previously authorized under the Tongass Exemption because the Interim Directive currently in place reserves all decision making authority on timber sales to the Secretary of Agriculture.

## V. CONCLUSION

For the reasons set out above, plaintiffs' motion for summary judgment at docket 42 is **GRANTED** insofar as it seeks to vacate the Tongass Exemption and reinstate the Roadless Rule's application to the Tongass, and is **DENIED** without prejudice insofar as it seeks an order vacating the Scratchings Timber Sale ROD II, and portions of the

---

[112]*Idaho Farm Bureau Federation v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1991); *Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005).

[113]*Paulsen*, 413 F.3d at 1008.

[114]*Ruvalcabla v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999).

-26-

Iyouktug Timber Sales ROD and Kuiu Timber Sale Area ROD.  It is **FURTHER ORDERED** that defendants' cross-motion for summary judgment at docket 54 is **DENIED**.

DATED at Anchorage, Alaska, this 4th day of March 2011.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE